ELIAS A. WILKINSON et al., appellants,

*v.*

MICHAEL BAUERLE et al., respondents.

1. In the absence of statutory prohibition, a corporation may sell and transfer its property, and may prefer one creditor to another, although it is insolvent.

2. Since the repeal of the "act to prevent frauds by incorporated companies," and the failure to re-enact the provisions of its second section, in the

present revision, there exists no statutory prohibition against the sale of property or the preference of creditors by an insolvent corporation, except a preference by way of a confessed judgment, under the provisions of section 80 of the act concerning corporations.

3. But corporations and their officers may not divert the corporate property from the payment of debts, and when such diversion deprives creditors of the opportunity to enforce their debts, relief may be had by the injured creditors.

4. When the diversion charged is by a sale of corporate property to one of the directors taking part in the transaction as buyer and seller, it devolves on the directors to establish the good faith of the transaction and that the sale produced the full value of the property. If not made in good faith, or it did not produce the full value of the property, the directors taking part in the sale will be answerable to creditors for what was thus lost.

5. When a cause goes to hearing on bill, answer and replication, such parts of the answer as are responsive are to be taken as true; but such parts of the answer as tend to constitute a defence by way of avoidance will not be considered unless established by proof.

On appeal from a decree advised by Vice-Chancellor Bird, who filed the following conclusions :

The complainants obtained a judgment against the New York Sewing Machine Company, which they seek to enforce against the directors of that company. This special direction is sought, because the directors of the corporation sold and transferred all of its assets to one of its officers and directors, after it had become insolvent. It is undisputed that at the time of this sale the insolvency was known to all the contracting parties. The consideration paid has all been applied to the payment of all the liabilities of the company, except the judgment of the complainants.

Under the circumstances, it would seem that the directors are responsible. When they discovered the insolvency of the corporation of which they had control, their duty was plain. There was but one course for them to pursue in order to avoid personal responsibility. When they adopted any other course they did so at their peril. The cases in our own courts establish this doctrine upon the broadest basis. *Nat. Trust Co.* v. *Miller, 6 Stew. Eq. 155 ; Stewart* v. *Lehigh Valley R. R. Co., 9 Vr. 505 ; Wetherbee* v. *Baker, 8 Stew. Eq. 501 ; Van Wagenen* v. *Paterson Savings*

Wilkinson v. Bauerle.

*Bank, 2 Stock. 13; Guild* v. *Parker, 14 Vr. 430; Gardner* v. *Butler, 3 Stew. Eq. 702.* These cases show the voidability of such contracts as well as the liability of the officers who engage in them. And this same doctrine is very plainly expressed in *Perry on Trusts,* § *207.*

It remains to consider to what extent they are liable; for the whole judgment or only a certain percentage thereof. But who can determine the amount justly due to complainants from the assets of the insolvent corporation? To fix an amount less than the whole, with a certainty that it is just, will be impossible. It is said that the price fixed upon the assets transferred was $50,000. But when it is considered who were the contracting parties, it will at once appear that the valuation which they adopted ought not to guide us in this controversy. In every such instance the law takes it for granted that the parties dealing allow their judgments to be controlled by their selfishness.

But we cannot ascertain at this time the true value of those assets. They are beyond the control of the courts. The path pointed out by the statute was disregarded and the great object of the act was frustrated. This being so, who, if any one, ought to suffer from the uncertainty or confusion introduced? I think those who caused the uncertainty and confusion. Therefore, in my judgment, the complainants are entitled to have their judgment paid in full at the hands of the defendants who joined in the transfer. And I have less hesitation in coming to this conclusion in this case, since it is shown that all or nearly all of the creditors have been paid in full since the insolvency was known and since the sale alluded to.

I will so advise. The complainants should have their costs.

*Mr. J. R. Emery,* for the appellants.

*Mr. P. Woodruff,* for the respondents.

The opinion of the court was delivered by

Magie, J.

The bill of complaint in this cause was filed by Michael Bauerle

and Frank B. Stark against Elias A. Wilkinson, Thomas C. Woodward, William Titus, Frank A. Wilkinson, Abram V. Sargeant and Richard W. Lundy. The complainants therein (who are respondents here) based their claim for equitable relief on these allegations, viz.: that they had recovered judgment in the supreme court against the New York Sewing Machine Company, a corporation of this state; that said company had no assets subject to execution, and no assets at all, except some uncollectible book accounts; that the defendants (who are appellants here) were the only stockholders and officers of the company, and, as such, had made sale of all the property, except some book accounts and bills receivable, to Elias A. Wilkinson, one of their number, who was president of the company, for the consideration of $50,000; that out of said consideration, and the remaining assets of the company, all its debts had been paid, excepting respondent's judgment and some small claims amounting to less than $100; that the sale passed to Wilkinson valuable property, and was in fact made to him and others, who thereafter organized a new company, called the New York Sewing Machine and Manufacturing Company, and issued the stock of that company for said property, of which stock Wilkinson acquired $200,000 worth, which, it is charged, he distributed among the other stockholders of the New York Sewing Machine Company, and that Wilkinson was liable, as endorser, upon notes of the latter company, which were paid off by said sale.

The bill claimed that Wilkinson had thus obtained a fraudulent preference over the unpaid creditors of the company, and that appellants' conduct was, as to such creditors, fraudulent, in that it not only deprived them of the power to enforce their debts by execution, but stripped the company of all ability to pay them, and that they had thereby become personally liable for the unpaid debts.

The bill prayed that appellants should be decreed to pay respondents, and such other creditors as should come in, their debts due from the company, that the sale of the property should be declared invalid and fraudulent, and for further relief.

The answer of Wilkinson (which was called for and put in

under oath) admitted the judgment of respondents, the owner-
ship of the stock of the New York Sewing Machine Company,
and the sale to him of its property, which he averred was made
under the following circumstances, viz. : that in June, 1883, the
whole capital of the company had been lost ; that by his direc-
tion the superintendent made an appraisement of its property,
whereby it appeared to be worth less than $47,000, " as a going
concern," but, on a discontinuance of the business, not exceeding
one-half that sum ; that he made great efforts to sell the property,
without success, until finally one Graham agreed to give $25,000
for an undivided three-fifths of it, if Wilkinson would take the
remaining two-fifths ; that Wilkinson thereupon submitted an
offer of $50,000, which was considered by the stockholders as a
" beneficial sale," and unanimously accepted ; that he and others
organized the new company, as charged in the bill, and he had
received $200,000 of its capital stock, but had not transferred
any of it to any stockholder or officer of the old company except
one share to one person to qualify him to hold office in the new
company. The answer admitted that the proceeds of the sale
and the remaining assets had been applied as charged, and claimed
that the transfer of the property was made in good faith and for
a consideration exceeding its full and fair value.

The other answers made the same admissions and presented the
same facts. Each answer disclaimed the acquisition of any in-
terest in the new company in consideration of the sale of the
property of the old company, and averred the sale to have been
made in the belief of its good faith, and that the consideration
was full and fair.

A replication was filed, and the cause was referred to a vice-
chancellor. If any evidence was presented to him, it has not
been printed or brought to our notice.

Upon the vice-chancellor's advice, it was decreed that the sale
of the property was fraudulent and invalid, and that the directors
and stockholders should pay to respondents the amount due on
their judgment, with interest and costs. From this decree all
those affected by it have appealed. Upon the case before us, the

decree must be considered to have been made, and must be here sustained (if at all) upon the bill, answers and replication.

The conclusions of the learned vice-chancellor who heard the cause were that the sale was made when the insolvency of the company was known to the parties; that upon such knowledge the directors were bound to follow the directions of the statute, and put the property in the way of equitable distribution among the creditors; that the sale made to one of their number, under such circumstances, was voidable, and that the directors, in making such a sale, incurred a personal liability to pay the debts of the company.

That the New York Sewing Machine Company was insolvent at the time of the sale in question is manifest from the admissions of the answers.

Upon the admitted insolvency of the company, it is contended that the transfer of its property, which was so made as to prefer some of its creditors, was absolutely void. The view thus presented seems to have been taken by the vice-chancellor. The correctness of this view, and the success of the contention now made, depend upon the legislation now in force respecting this subject. For if there be no legislative prohibition against the transfer of corporate property or its use in preferring creditors after insolvency, no reasons can be given why such transactions should be invalidated which would not also invalidate the like transactions of individuals. Both reason and authority establish the proposition that a corporation may sell and transfer its property, and may prefer its creditors, although it is insolvent, unless such conduct is prohibited by law. *Sargent* v. *Webster, 13 Metc. 497; Catlin* v. *Eagle Bank, 6 Conn. 233; Smith* v. *Skeary, 47 Conn. 47; Dana* v. *Bank of United States, 5 W. & S. 223; Arthur* v. *Commercial Bank, 9 S. & M. 394; Town* v. *Bank, 2 Doug. (Mich.) 530; Buell* v. *Buckingham, 16 Iowa 284.*

The "Act to prevent frauds by incorporated companies," which originally became law February 16th, 1829 (*Harr.* 212), contained, in section 2, an express prohibition against any sale or transfer of the property of an incorporated company, either after insolvency or suspension of the ordinary business of the company,

Wilkinson *v.* Bauerle.

or in contemplation of its insolvency. Such sales or transfers were expressly declared to be void as to creditors, except in case of a *bona fide* purchase for valuable consideration before the company had suspended its ordinary business, by a person having no knowledge or notice of its insolvency or contemplated insolvency. This act was re-enacted with the same title on April 15th, 1846, and included in the revision then made. *R. S. 129.* The second section of the revised act was identical with the second section of the previous act.

These provisions were properly construed as requiring the affairs of any incorporated company becoming insolvent to be put in a train of proceedings (the form of which was prescribed) whereby its property was distributed among its creditors, and as forbidding the preference of any creditor after insolvency known or contemplated. *Holcomb* v. *New Hope Bridge Co., 1 Stock. 457 ; Van Wagenen* v. *Savings Bank, 2 Stock. 13 ; State Bank* v. *Receiver, 2 Gr. Ch. 266 ; Receivers* v. *Paterson Gas Co., 3 Zab. 291 ; Kinsela* v. *Cataract Bank, 3 C. E. Gr. 158 ; Wells* v. *Rahway White Rubber Co., 4 C. E. Gr. 402.*

If the present legislative scheme includes such provisions, the sale in question must, no doubt, be treated as invalid as against respondents.*

In the last revision of our laws, such of the provisions of the act to prevent fraud by incorporated companies as were re-enacted have been included in the act concerning corporations, as section 69 and the following sections. *Rev. p. 175.* The reviser's draft of the new act is said to have contained the second section of the previous act, but if so, that section was not re-enacted in the act concerning corporations or elsewhere. The act to prevent frauds by incorporated companies was itself expressly repealed. *Rev. p. 1395 § 411.*

We are thus required to determine the effect produced by this change in our law.

The omission to re-enact the second section of the act to prevent frauds by incorporated companies, and the repeal of that act, clearly indicate a legislative intent to no longer prohibit the conduct which that section had been construed to prohibit. The

intent so indicated must prevail unless the prohibitions of that section have been elsewhere re-enacted, or can be discovered in other existing legislation.

The provisions of the omitted section have not been elsewhere expressly re-enacted.

But it is urged that the remaining sections of the " act to prevent fraud by incorporated companies," which are included in the corporations act, indicate that the legislative scheme still includes the distinctive features of the old act, such as the equal distribution of the assets among creditors as of the time of insolvency &c., and so practically excludes any disposition of the assets or preference of creditors after insolvency. In the face of a repeal of a section expressly prohibiting such acts, it would be a hazardous construction which finds a prohibition to be implied from the re-enactment of the remaining sections.

While it cannot be denied that the revision has retained clauses of the previous act, which, in the absence of the second section, leave the legislation somewhat incongruous and difficult to construe, yet, in my judgment, if the present act were original legislation, there is nothing in it to justify the inference of an intended prohibition of sales and transfers of corporate property or preference of creditors, until a receiver has been appointed under the proceedings prescribed. Thus, the provisions of sections 72 and 77, vest in the receiver, when appointed, title to the company's assets at the time of its insolvency or suspension of business. But it is manifest that these provisions must be construed to apply only to such assets as have not been, before the receiver's appointment, otherwise lawfully disposed of. For a literal construction would destroy the title even of a *bona fide* purchaser buying in ignorance of the company's insolvency, and no implication which could produce such an effect could be admitted. So the provisions of section 80 require creditors to be paid proportionately to their debts "excepting mortgage and judgment creditors, when the judgment has not been by confession, for the purpose of preferring creditors." These provisions may be held to forbid the preference of creditors by a confession of judgment, but they may be so construed without in

the least affecting the question now raised. No other provisions have any bearing on the question.

But whether this view be correct or not, the legislation we are considering was not original, but revisory legislation. Whatever implications could be drawn from its provisions, looking toward the prohibition of certain acts, must yield to the clear legislative intent which appears in the repeal of the section which contained an express prohibition of those acts.

The result is that the conclusion reached below, respecting the sale, cannot be adopted. The doctrine of the cases relied on by the vice-chancellor depended on legislation now repealed, and the cases cannot be considered as authorities as to the present duties or liabilities of the officers of incorporated companies. The conclusion to which I am compelled is that the sale or transfer of the property of an incorporated company, or the use of such property to prefer creditors after insolvency, is not now prohibited, except so far as a preference by a confessed judgment is prohibited by the provisions of the eightieth section, above referred to.

It remains to consider whether respondents can be accorded any relief upon the facts.

It appears, beyond dispute, that the transfer of all the tangible property of the company to Wilkinson has deprived respondents of the opportunity to resort to it to enforce payment of their debt, and has deprived the company of the ability to use the property in business. By the sale and the disposition of its proceeds the company was practically dissolved. The sale was not in open market or to a stranger bargaining with the company, whose offer might be presumed to afford some indication of the value of the property. It was a private sale made by directors to a director who took an active part in the transaction. He fixed the price offered as buyer and united with the others in accepting the offer as seller. Although others were interested in the purchase, this was the plain effect of the transaction. *Stewart* v. *Lehigh Valley R. R., 9 Vr. 505.*

While the act to prevent frauds by incorporated companies remained in full force, it was rightly construed to be of the

nature of a bankrupt act for corporations. Upon the occurrence of insolvency, the corporate property was thereby devoted, among other things, to the equal payment of all unsecured debts, and preferences were excluded. The relation of the property to the creditors was therefore such that it resembled a relation of trust, and was frequently and justly treated in judicial discussion and decision as a trust relation. The change in legislation which has been above discussed has manifestly modified and limited that relation. Before that change, the property of an insolvent corporation was a fund devoted to the payment of all creditors, and a sale or transfer of that property by the directors was a diversion of the fund devoted to that use. Since the change, the property may be sold and used in payment of some creditors to the exclusion of others.

But in my judgment the change in legislation has not deprived creditors of incorporated companies of all rights, in respect to the property out of which their debts must be paid, if at all.

As between creditors and stockholders, the corporate property has always been held to be a fund for the payment of debts, to which creditors have a right in preference to stockholders. *2 Story's Eq. Jur. § 1252.* So the assets of a corporation cannot be divided among its stockholders, nor diverted to uses not contemplated by its charter, for the benefit of stockholders to the detriment of creditors. *Nat. Trust Co.* v. *Miller, 6 Stew. Eq. 155; Guild* v. *Parker, 14 Vr. 430.* Nor can directors, by fictitious credits or by accepting over-valued property in payment for stock subscriptions, deprive creditors of the fund out of which their debts should be paid. *Wetherbee* v. *Baker, 8 Stew. Eq. 501.*

These doctrines do not at all depend, as I conceive, on the existence of a corporation bankrupt law or other like legislation, nor on the prohibitions of the statutes respecting transactions in fraud of creditors, but rather on principles inherent in the nature of corporations as artificial persons whose creditors can only enforce their debts by a resort to the property the corporation has acquired.

So, upon like principles, I apprehend that the property of an incorporated company is devoted to the payment of the creditors thereof, at least to this extent, that it may not be diverted to other purposes. The corporation and its officers owe to their creditors this duty : not to divert the corporate property from the general purpose of paying the creditors. While they may dispose of the corporate property, and even prefer one creditor to another, they may neither give away the corporate property by a direct gift, nor by a sale at less than its full and fair value, to the detriment of creditors. A violation of this duty will entitle the creditors who suffer thereby to relief.

If the diversion of the corporate property from the payment of debts is effected by a mere gift, it is not necessary to discuss what relief could be afforded to creditors.

If the diversion is effected under the guise of a sale, and the sale is not objectionable as being made with intent to defraud creditors, then it is plain that relief cannot be afforded to creditors by setting aside the sale, for that, as we have seen, is not now prohibited. But in such a case, it is equally plain that the directors who have effected such a diversion of corporate property from the payment of debts, have violated a duty, and will be personally liable to make up to creditors what has by their acts been thus diverted.

When such diversion is charged to have been produced by a sale of corporate property to a stranger, the complaining creditors could obtain relief only by clear proof that by the fault of the directors and in violation of their duty, the sale was made for less than the full and fair value of the property.

But when directors make sale of corporate property to one of their number, who takes part in the transaction as both buyer and seller, and creditors are thereby deprived of the opportunity to enforce their debts, then it results, from the relation above mentioned as existing between them and the creditors, that it devolves on the directors to show that the transaction was made in good faith, and that the sale produced the full value of the property. If they fail to show these facts, creditors are entitled to compel them to account for the full value of the property.

The fact that by reason of the sale it has been rendered diffi-- cult to determine the real value of the property sold, will not alter the measure of the directors' liability.   If there is a conflict of evidence respecting value, the fact that by the act of one of the parties the determination of the question has been rendered difficult or impossible may be considered, but it cannot enlarge the liability of the directors, which is only for so much as has been lost to the creditors by their misconduct.

It remains to determine whether any such relief can be accorded to the creditors in this case.

The bill was filed for relief respecting the objectionable sale to Wilkinson.   It has not been contended that respondents are not entitled to the relief above indicated, on the ground that it is not the specific relief prayed for.   There is a prayer for general relief, under which a decree for such relief can be made if the facts justify it.

The contention is that such relief ought not to be decreed, on the ground that it appears that the sale to Wilkinson was made in good faith and produced the full and fair value of the property.

If the hearing had been on bill and answer alone, the contention must prevail, for in that case every allegation of the answers must be taken as absolutely true, and the answers of appellants do in fact aver, more or less distinctly, that the sale was made in good faith and for a fair and full value.

But a general replication was filed to these answers and, no evidence being taken, the cause was thus brought to hearing. Under these unusual circumstances, not adverted to in the opinion below, it becomes a question what facts are to be taken into consideration in determining the cause.   The question must be settled by the rules of practice in chancery.   The rule is laid down by Judge Story thus : " When an answer is traversed and the case set down for hearing on bill, answer and traverse, the averments in the answer will only be taken as proved so far as they are responsive to the bill."   *Story Eq. Pl.* (*8th ed.*) § *456 a.* His statement of the rule is in accord with the statements of other text writers, and is supported by many cases.   *1 Smith's Ch. Pr.*

Wilkinson *v.* Bauerle.

*336, 272, note 6; 1 Barb. Ch. Pr. 317; Jennison Ch. Pr. 170; Mitford & Tyler's Pl. & Pr. 461; Adams Eq. (6th Am. ed.) 20; Hart* v. *Ten Eyck, 2 Johns. Ch. 62, 89; Wakeman* v. *Grover, 4 Paige 23, 11 Wend. 187; Simson* v. *Hart, 14 Johns. 63; Lovett* v. *Demarest, 1 Hal. Ch. 113; Mott* v. *Harrington, 12 Vt. 199; Bartlett* v. *Gillard, 3 Russ. 149; Freeman* v. *Tatham, 5 Hare 328.* Many other cases are collected in the note to *Smith's Ch. Pr.* above cited.

Applying this rule, I think the allegations of the answers, respecting the good faith of the sale and that the property brought its full value, are not to be taken as establishing those facts. To the charges of the bill, the answers are responsive in stating that the sale of the property was made by the directors to one of their own number, taking part in the transaction as buyer and seller. Upon that admission, standing alone, respondents would be entitled to a decree charging appellants with the real value of the property sold, leaving it to be determined by an accounting whether the sale had produced the real value. If not, appellants would properly be decreed to pay the deficiency. Moreover, it was required of appellants, as we have seen, to establish by proof the good faith of the transaction and that it had produced the real value of the property. Under such circumstances the allegations of the answers to that effect must be taken not as responsive, but as alleging new matter by way of avoidance, and the rule above stated is therefore applicable.

For these reasons, the decree below should be modified. The clause respecting the sale should be struck out. The modified decree should charge appellants with the real value of the property sold to Wilkinson, allowing them what was received from him—the value to be determined by a reference according to the practice of the court of chancery. The decree should direct that if upon such reference the real value is found to exceed the con · sideration received, appellants should pay the excess, with interest, since the sale, upon the debt of respondents and the debts of such other creditors of the company as may come in under their bill. Respondents, having been entitled to a decree below, should retain their decree for costs there. Appellants, having succeeded in this

court in materially modifying the decree, should have their costs of the appeal.

*Decree unanimously reversed.*