The Savoy Silk Mills, a corporation, was declared insolvent March 9th, 1925, and the complainant was appointed receiver. The bill is filed to compel the defendant, Hamilton Trust Company, to account for property transferred to it by the corporation while insolvent, in violation of section 64 of the Corporation act.
In the year before, April 1st, the Savoy Silk Mills called a meeting of creditors and made a settlement with all but five at twenty cents on the dollar. The Hamilton Trust Company, a heavy creditor, not included in the settlement, advanced the necessary funds, $20,400, and took a chattel mortgage, June 25th, 1924, as security. The mortgaged property included, among other things, seventy Providence looms, upon which the trust company then held a conditional bill of sale for the balance of the purchase price, $10,000. The looms were later sold, fetching $9,294.60. The receiver claims the money on the theory that the chattel mortgage having been taken during insolvency, with notice of insolvency, it is void under the statute. The proposition is well founded in fact and law. Turp v. Dickinson, 100 N.J. Eq. 41. But the trust company took nothing by the chattel mortgage. The proceeds of sale were rightfully appropriated to the debt due on the conditional bill of sale. The prayer as to this item is denied.
The trust company held four notes of the Savoy company aggregating $27,250, secured by the debtor's trust receipts for raw silk in the debtor's possession, held in trust for the trust company. On March 5th, 1924, the debt of the four notes was reduced to one note of $27,250, and the trust company surrendered the trust receipts, releasing the raw silk, and took in exchange and as substituted security four hundred and one shares of stock of the Union Realty Company. This stock originally belonged to the Foxes, father and son, incorporators of the Savoy company and its managing directors. They had previously pledged it with the trust company as early as September, 1923. For the purpose of a better showing in the financial statement of the Savoy company, to increase *Page 375 
its line of credit, the Foxes assigned the stock to the Savoy company subject to the lien of the trust company and it was then formally and documentarily repledged. For present purposes it is sufficient to deal with the pledge by the Savoy company. The receiver claims that this was without consideration other than to secure the antecedent debt of $27,250; that at that time the Savoy company was insolvent, and the pledge in violation of the statute. Agnew Co. v. Board of Education, 83 N.J. Eq. 49. His notion is that the trust receipts were invalid because ineffective to pass the legal title to the trust property from the Savoy company to the trust company, and hence valueless and their surrender no consideration for the pledge of the stock. The point is without merit. Where the legal title to property, held as security, is in the creditor who entrusts the property to his debtor, the trust is enforceable at law. Century Throwing Co.
v. Muller, 197 Fed. Rep. 252; In re Killian Manufacturing Co.,209 Fed. Rep. 498; affirmed, 215 Fed. Rep. 82; In reBettman-Johnson Co., 250 Fed. Rep. 657; Old Colony Trust Co. v.Sugerland Industries, 296 Fed. Rep. 129. But where the legal title is in the debtor, who holds in trust for his creditor, the trust can be enforced in equity only. The question is one of remedy, not of title. In the cases cited, banks advanced to their clients' funds to purchase raw material; the banks taking title from the shippers, delivered the material to the clients to be made up, upon trust receipts to hold the goods or the proceeds to pay the debt. The law courts, dealing with the legal title, upheld them as valid. In the case in hand the Savoy company held the legal title but bound itself to hold the merchandise in trust for the trust company as security for the debt. An owner of the legal title to personal property in possession may declare himself trustee for another and equity will enforce the trust.Janes v. Falk, 50 N.J. Eq. 468; Collins v. Steuart, 58 N.J. Eq. 392.
The exchange of the stock for the receipts was not void because made after insolvency. There can be no doubt that the liabilities of the Savoy company exceeded its assets and that it was in fact insolvent when the exchange was made. *Page 376 
Calling the creditors together shortly thereafter indicates that; but that it was at the time insolvent in the statutory sense,i.e., "a general inability to meet pecuniary liabilities as they matured, by means of either available assets or an honest use of credit," is by no means established. It was functioning normally. It had not actually suspended its ordinary business. Its mill was in full operation, and the exchange was in the regular course of business. Hoover Steel Ball Co. v. SchaferB.B. Co., 89 N.J. Eq. 433. The trust company had no notice of the actual insolvency and the legality of the exchange cannot be successfully challenged on that score. The discussion of this phase of the case would be purely academic were it not for the receiver's claim that the trust company realized $10,000 on the stock for which it should account. The stock proved worthless. The stockholders of the Union Realty Company were wiped out by mortgage foreclosure. Before that occurred the trust company held a pledgee sale, bid in the stock for $10,000 and credited the amount to the loan. Whether the sale should be regarded as a mere formality or an acknowledgment of the worth of the stock is immaterial. The exchange of the stock was valid to the extent of the value of the trust receipts, at least, and it is not disputed that the value of the trust receipts was equal to the bid for the stock.
On June 18th, 1924, the trust company, with notice of the insolvency, discounted a note of the Olympic Silk Company and placed the amount to the credit of the Savoy company, $5,891. A few checks against the account were honored and the balance, $5,657.28, was appropriated by the trust company by draft of June 21st when it closed the account. This was in violation of the statute. The trust company must account for the money. Counsel for the trust company made no defense of the transaction in his brief, and it is to be assumed he had none. If it escaped his attention he may be heard on the settlement of the decree.
The bank is a heavy creditor of the Savoy company. Leave will be given to prove its claim before the receiver. In the meantime it will be relieved from the payment of the amount *Page 377 
with which it stands charged and execution of the decree stayed until and upon payment of the administration expenses and the allotment to other creditors under an order of distribution in the insolvency suit.