In the penultimate paragraph of an earlier opinion (105 N.J. Eq. 373), it was stated that $5,657.28 of the insolvent Savoy Silk Mills had been appropriated by the trust company to its own use, for which it must account. The trust company accounted by showing that it had paid the money to creditors of the insolvent company. Thereupon, the receiver amended his bill charging that the trust company, as agent of the insolvent company, paid the money after insolvency, in violation of the sixty-fourth section of the Corporation act, which forbids directors, officers or agents of insolvent corporations from transferring assets and declares the transfers null and void.
After the Savoy Silk Mills became insolvent and suspended operation, a compromise was effected with its commercial creditors at twenty-five per cent. on the dollar, twenty per *Page 56 
cent. in cash and five per cent. promissory note. All the creditors accepted and were paid, except Bachmann, Emmerick 
Company, Incorporated, the company's factor, which refused to join in the compromise because it felt it had sufficient goods on hand to secure its claim. The trust company financed the compromise by lending the insolvent company $20,000, secured by a chattel mortgage, and by discounting the note of a customer of the insolvent company which yielded $5,657.28. By arrangement with the creditor's committee the sums were deposited in a fund to the credit of "Hamilton Trust Company, by H.H. Parmlee, president, for account of Savoy Silk Mills, Incorporated." After applying approximately $10,000 to relieve the chattel mortgage of a prior conditional bill of sale, the trust company paid the creditors twenty per cent., except Bachmann, Emmerick Company, Incorporated, the factor. The sale of the merchandise security held by the factor resulted in a deficiency of upwards of $15,000, whereupon it filed a bill in this court and a decree was entered declaring the Savoy Silk Mills insolvent and appointing the complainant receiver. Its claim for $15,874.72 was allowed by the receiver.
 The amended bill involves only the net proceeds
of the note ........................................... $5,657.28
of which the trust company paid creditors 20% ......... 5,133.83
 _________
 $523.45

If the items are correctly stated the trust company is at all events responsible to the receiver for $523.45.
The receiver claims the entire fund, insisting that inasmuch as the trust company, as agent of the insolvent corporation, was forbidden to transfer assets after insolvency, it was guilty of a breach of trust and personally liable for the unlawful diversion. The trust company's attitude is that it was not an agent within the meaning of the act, that it was merely a depository of the fund for equal distribution among creditors who accepted the compromise. If the implication is that though it may be unlawful for an insolvent company to place funds with an agency for distribution *Page 57 
among a limited number of creditors, and for the doing the directors would be personally liable, no liability attaches to an agency knowingly carrying out the unlawful act, the position is not sound. The statute is, as its original title indicates, for the prevention of frauds by corporations, and requires its directors, officers and agents, upon insolvency, to place corporate assets in the orderly and prescribed course of administration for equal distribution among creditors, and any agency failing, or which aids and abets in the subversion of the law is amenable. The inclusion of agents in the statute as among those forbidden to transfer property after insolvency, is to insure obedient co-operation by all holding corporate assets, and applies to all agencies possessed of property, able to obey the mandate; personal responsibility follows upon failure or refusal to comply.
The trust company was not a mere conduit nor an innocent instrumentality for the insolvent corporation; nor did it hold the fund in trust for the creditors. It was the appointed agent of the Savoy Silk Mills, Incorporated, to dispose of its assets in disobedience of the direction of the statute. The company was hopelessly insolvent; it had shut down its mills two months before, its credit was gone and it had no intention of resuming business. Had the compromise been effected with a view to resuming business another question may have risen, but that was not the purpose of the compromise. The trust company was a creditor for upwards of $100,000 for which it held some security, and its interest in supplying the funds for the compromise was obviously to facilitate the recovery of its own debt out of remaining assets, unembarrassed by the creditors with whom the compromise was made; it was an active participant in the compromise and solicitous in procuring releases from the accepting creditors "so they could not come back to us later on," as the president admits, he intimating that it was because they were taking a chattel mortgage, but a fair inference is that the trust company wanted to be free of them in its further effort to recover its own debt. The real motive, however, is immaterial. The statute is explicit, mandatory; where an insolvent *Page 58 
company has no future but liquidation, the directors, officers and agents have no option or discretion to handle the assets otherwise than the statute directs. If they pursue any other course they do it at their peril. Wilkinson v. Bauerle,41 N.J. Eq. 635; Turp v. Dickinson, 100 N.J. Eq. 41. The refusal of Bachmann, Emmerick Company, Incorporators, to compromise its claim because it believed it had sufficient merchandise security was not a waiver of its debt in the event of a deficiency, nor was its refusal to join in the compromise, for the assigned reason, a consent to the use of the corporate funds in a manner forbidden by law and if its refusal was mistaken by the trust company as an acquiescence in the doing of the forbidden, the transgressor assumed the risk.
The trust company will be ordered to pay the receiver the proceeds of the note; to this the bill confines the relief. To insure equality of distribution it will be allowed to file its claim with the receiver for its debt and will be allowed the full amount of the creditors' claims it compromised. Bachmann, Emmerick Company, Incorporated, is entitled only to its share of the diverted corporate assets, prorating with all creditors of the insolvent company. The trust company also will be permitted to withhold payment of the decree until distribution is made in the insolvency suit. *Page 59