## JOSHUA S. COPE

*v.*

## C. B. WALTON COMPANY et al.

[Decided June 14th, 1910.]

1. Under the rule that any order, no matter how informally expressed, or any act which makes an appropriation of a fund, is a good assignment in equity, an instrument executed by a contractor for the construction of roads in a county, addressed to the county collector, and requesting the payment to a person named of the moneys due on the contract, as they become due, is a valid assignment in equity.

2. Where a contractor, in need of financial assistance to enable it to perform the work, executed an assignment of the moneys to become due under the contract to a third person, who endorsed notes of the contractor, which notes were discounted by a bank for the benefit of the contractor, the assignment was supported by a sufficient consideration.

3. Under 2 *Gen. Stat. 1895 p. 2078*, securing the payment of laborers and materialmen on any public improvement in municipalities, a contractor for a municipal improvement may assign in advance all the moneys to be derived by it under the contract and defeat the claims of the creditors of the contractor doing work on or furnishing material for the improvement.

4. The treasurer of a corporation who, since its organization, has been permitted exclusively to manage and control its affairs, has authority to assign moneys to become due under a contract for a public improvement to be constructed by the corporation, to enable it to obtain money to carry on the work.

5. Where an order is drawn on a particular fund and presented to the debtor, there is an equitable assignment, though the debtor refuses to recognize the assignment.

6. Where the assignment of moneys to become due under a contract for the construction of roads in a county was lodged with the county collector, the notice to the county collector of the assignment was notice to the board of freeholders of the county.

7. An assignment for a valid and presently moving consideration, executed by an insolvent corporation to an assignee who has knowledge of the insolvency, or by a corporation contemplating insolvency, to an assignee who has knowledge thereof, is void as against creditors.

8. A corporation contracting for the construction of roads in a county assigned the moneys to become due under the contract. Seven months later it went into the hands of a receiver. The corporation had since its

organization been in financial straits and had been constantly aided by the assignee. At the time of the assignment, the corporation was in arrears for taxes and was unable to pay its insurance and was in default for interest on mortgages and had only nominal cash balances in a few banks. It could not pay its current bills, and its credit with the banks was exhausted. About a year before the assignment, it had conveyed all its property to the assignee as security for a past-due indebtedness and to secure future advances.—*Held*, that the corporation was, to the knowledge of the assignee, insolvent at the time of the assignment, so that it was void as against creditors.

9. One failing to comply with *1 Gen. Stat. 1895 p. 2078*, securing the payment of laborers and materialmen on municipal improvements, and requiring the filing of notices by claimants, by failing to file a notice, is not entitled to the benefit of the statute.

10. One boarding the laborers constructing a road in a county, pursuant to a contract therefor, is not within *1 Gen. Stat. 1895 p. 2078*, securing the payment of laborers and materialmen on public improvements.

On final hearing, on pleadings and proofs.

*Messrs. James & Malcolm G. Buchanan,* for the complainant.

*Mr. Frank S. Katzenbach, Jr.,* for the defendant Allen.

*Mr. John J. Treacy,* for the defendant Indian Refining Company.

*Mr. Joseph C. Harrison, Jr.,* for the defendants Cain, Van Sant and Hill.

*Mr. J. Lefferts Conard,* for the defendant Yuzzolina.

WALKER, V. C.

The bill in this case was filed to enforce the payment of a municipal lien claim under the act entitled "An act to secure the payment of laborers, mechanics, merchants, traders and persons employed upon or furnishing materials toward the performing of any work in public improvements in cities, towns, townships and other municipalities in this state," approved March 30th, 1892. *Gen. Stat. p. 2078.* The defendant company was awarded, by agreement dated April 25th, 1908, the contract for constructing a certain stone road in the county of Mercer for the sum of

$14,360.64, with payments to be made as provided in the contract and specifications. In June, 1908, the defendant company entered into a contract with the complainant for the furnishing of crushed stone for the road at $1.30 per ton. This contract was performed and thereunder the C. B. Walton Company, defendant, became indebted to the complainant in the sum of $6,763.24, payment whereof being refused the complainant filed a lien claim under the act. The complainant filed three liens in all; one October 9th, 1908, for $3,754.51; another October 17th, 1908, for $6,674.43; and another November 13th, 1908, for $88.81. Other lien claims were filed; one by George R. Cain, October 16th, 1908, for $431; one by Stephen Van Sant, November 2d, 1908, for $96.60; and another by Joseph B. Hill, November 21st, 1908, for $134.95.

It was on April 14th, 1908, nine days before the contract was awarded, that the bids were opened, and it was found that the defendant C. B. Walton Company was the lowest bidder for the road. The company also received two other contracts for roads. On the day mentioned, Charles B. Walton, the treasurer and general manager and the active head of the defendant company, negotiated with the defendant Thomas R. Allen, for financial assistance, to enable the company to prosecute the work of building the roads. The result was that Messrs. Walton and Allen repaired to the First National Bank of Trenton and informed the president, Mr. Scudder, of the project. The three conferred and the result of their deliberations was an agreement that the C. B. Walton Company should give to Mr. Allen an assignment of the moneys to grow due under the road contracts, and that he, Allen, would endorse the notes of the company and the First National Bank would discount them for its benefit. On May 13th, 1908, an order was made, of which the following is a copy:

"TRENTON, N. J., May 13th, 1908.
"*Mr. E. P. Mount, County Collector, Mercer County, N. J.:*

"DEAR SIR—Please pay Thomas R. Allen all moneys due on contracts for roads as the monthly payments at different times as they come due until the completion of all work contracted for the year nineteen hundred and eight, by so doing you will oblige,

"Yours very truly,
"THE C. B. WALTON COMPANY,
"Charles B. Walton, Treas."

This order was on its date lodged with the county collector, and as each payment under the contract became due, the collector notified Allen and he would either receive the money or else draw up an order to pay the same to the C. B. Walton Company. Under this arrangement, Allen paid out $11,233 and received $4,356.74, leaving a balance due him of $6,866.26, which, with interest, about equals the balance due from the county under the contracts. The question is, whether these moneys shall go to Allen, under his assignment, or whether the lien claimants are entitled to the same as far as the fund will extend.

The order given by C. B. Walton Company to the defendant Allen is founded upon a good and sufficient consideration and amounted to an assignment in equity of the fund to become due from the county to the C. B. Walton Company. Any order or writing, no matter how informally expressed, or any act which makes an appropriation of a fund, is a good assignment in equity. *Shannon* v. *Mayor of Hoboken, 37 N. J. Eq. (10 Stew.) 123, 125.*

On behalf of the complainant, it is urged that even assuming the assignment from the defendant company to Allen to be valid, Allen's claim under it must be postponed to the lien claims because it is alleged the statute gives lien claimants in these cases an inchoate lien which will ripen into a perfected and enforcible one upon the statutory proceedings being taken to perfect their claims, and reliance is placed upon the case of *Pierson* v. *Haddonfield, 66 N. J. Eq. (21 Dick.) 180.* This case is certainly an authority for the complainant's position to a certain extent. In his opinion, Vice-Chancellor Grey said (at *p. 189*) :

"The purpose and object of the statute is fairly indicated in its title. It is there declared to be an act to secure the payment of persons employed upon or furnishing materials toward the performance of any work on public improvements in the municipalities of this state. The first section also declares that any person doing any work or furnishing any material 'toward the performance or completion' of any contract with a municipality for a public improvement shall have a lien. The right to a lien arises when the work or material is supplied towards the performance of the contract, not when it is completely finished. The

second section, in terms, prescribes that the notice of claim may be filed at any time before the whole work to be performed is completed, or within fifteen days afterwards. The right to the lien is inchoate until perfected by the filing of the notice. It is true there can be no compulsion of payment until after the contract is completed, for until that has happened it cannot be known who all the respective lien claimants are, in order to adjudge their claims (section 8), or whether the municipality has any right to retain any part of the contract price to reimburse itself for any losses it may have suffered in completing the work. This necessary postponement of the ascertainment of the respective lien claimants, and of the payment of the portion of the contract price to which they may be entitled, does not prevent the claimant from perfecting his lien on such part of the contract price as may be either due or to grow due to the contractor, for by the express words of the statute (section 5) the lien attaches from the time of the filing of the lien notice, and obviously has effect whether the contractor is proceeding with performance of the contract or has abandoned it. The lien attaches not because of the act of the contractor in having finished the performance of his contract, but because of the act of the lien claimant in furnishing labor or material towards the performance of it and giving notice thereof as prescribed by the statute. The subject-matter of the lien is the fund due or to grow due to the contractor, which means not only what is due to the contractor at the time the lien notice is filed, but also what may thereafter come to be due to him."

And again (at *p. 193*) :

"Any other construction of the statutory lien would make the statute a baited trap, inviting workmen and materialmen to give credits to contractors erecting public improvements upon the assurance that the payment of their claims would be secured, but depriving them of their security by the enforcement of a latent equity, to the creation of which they were not parties, and of which they knew nothing when they gave their credits, which, in fact, came into existence (if it ever did arise), because of circumstances happening long after the claimants' liens had attached."

This opinion (*Pierson* v. *Haddonfield*) was filed February 23d,

1904, and on February 27th, 1904, Vice-Chancellor Reed filed an opinion in *Garretson* v. *Clark, 57 Atl. Rep. 414,* in which he held the opposite of the doctrine just stated. He said (at *p. 415*) :

"It seems entirely clear that the liens of the respective claimants arose at the moment when the claims were filed. * * * Under our original Mechanics' Lien act, until demand and notice by a laborer or materialman was given, the contractor could deal with the amount due him in any way he chose. The present act, of course, expressly limits his ability to do so, but no such limitation is contained in the act of March 30th, 1892, under which the present claims were filed."

Vice-Chancellor Grey evidently became converted to Vice-Chancellor's Reed's view, for in *Somers Brick Co.* v. *Souder (September 13th, 1905), 70 N. J. Eq. (4 Robb.) 388,* he said (at *p. 394*) :

"The claimant, under the act of 1892, secures his lien for the first time when he files his notice of claim. This is the effect of the statute. Vice-Chancellor Reed so held in *Garretson* v. *Clark, 57 Atl. Rep. 414.* Preceding the filing of the notice of lien claim, the contractor might transfer his interest in the contract price. So, also, the contractor and the city, before any claims are filed, being the sole parties to the contract, may postpone or anticipate payments thereunder.

"This was the case under notices by virtue of the third section of the Mechanics' Lien act *(Craig* v. *Smith, 37 N. J. Law (8 Vr.) 549)* before the supplement of March, 1895, changed its operation and gave an inchoate lien to the workmen and materialmen before notice served. *Slingerland* v. *Binns, 56 N. J. Eq. (11 Dick.) 413.* In the act of 1892, now under consideration, there is no prohibition against anticipated payments, no inchoate lien on the fund, and no provision making the owner who prepays liable to a subsequent lien claimant."

Thus it appears that Vice-Chancellor Grey, in *Pierson* v. *Haddonfield,* held that the lien of a workman or materialman arose when the work was done or material supplied toward the performance of the contract, and that the right to lien was inchoate until perfected by the filing of notice, while Vice-Chancellor Reed, four days later, held, in *Garretson* v. *Clark,* that the liens

arose at the moment when the claims were filed, and Vice-Chancellor Grey, effectually, though not expressly overruling his own case of *Pierson* v. *Haddonfield,* agreed with Vice-Chancellor Reed in his (Grey's) later opinion in *Somers Brick Co.* v. *Souder,* wherein he held that under the Municipal Lien law there is no prohibition against anticipated payments, no inchoate lien on the fund, and no provision making the owner who prepays liable to a subsequent lien claimant.

However, it is to be observed, even upon the theory of Vice-Chancellor Grey in *Pierson* v. *Haddonfield,* that the lien had its inception from the time of work done or materials furnished and that it then became inchoate, and it is to be implied that before work done or materials furnished the contractor could make a valid disposition of the moneys to become due under his contract. And that is why I said above that *Pierson* v. *Haddonfield* is an authority for complainant only to a certain extent, it being apparent under that case that there could be a valid assignment of moneys to grow due under a municipal contract before work done or materials furnished, but that if made afterwards and before lien filed the assignment would be subject to the lien of the workman or materialman.

It may be unfortunate that the legislature has not seen fit to provide with reference to work on municipal contracts that the contract price shall be liable to lien for work done and materials furnished, and that such liens shall have priority over any assignments or latent equities, no matter when made or created. In the existing state of the law it seems that a contractor for municipal improvements may assign the money to be derived by him under the contract, in advance and in its entirety, so as to defeat utterly the claims of all creditors of the contractor doing work or furnishing materials for the improvement. If this is to be remedied, legislation must be sought; the courts are powerless to extend it.

Counsel for the complainant assert, however, that the assignment to Allen is invalid for the following reasons—*first,* because the C. B. Walton Company did not execute or authorize the execution of the assignment, which was made by the treasurer without authority, and that it is therefore not binding upon the

company; *second,* because no notice of the assignment was given to the board of chosen freeholders of the county of Mercer, the debtor, and *third,* because the C. B. Walton Company was insolvent at the time the assignment was made, and that therefore the assignment is, under the statute, void as against creditors.

As to the first reason: True it is that the board of directors did not authorize the execution of the assignment to Allen, but, irrespective of what the by-laws provide concerning the powers of the treasurer with reference to the making of orders for the payment of money, I hold that Mr. C. B. Walton, the treasurer of the company, had power to make the assignment in question because the directors of this corporation since its organization in 1903 had permitted him to exclusively manage and control its affairs. Said the court of errors and appeals in *Fifth Ward Savings Bank* v. *First National Bank, 48 N. J. Law (19 Vr.) 513* (at *p. 527*):

"There are cases in which the powers of an officer of a corporation and his authority to act for the company are enlarged beyond those powers which are inherent in his office. But those are cases in which the agency of the officer has arisen from the assent of the directors, presumed from their consent and acquiescence in permitting the officer to assume the direction and control of the business of the company. Thus, when, in the usual course of the business of a corporation, an officer has been allowed to manage its affairs, his authority to represent the corporation may be implied from the manner in which he has been permitted by the directors to transact its business. These are simply instances of the application of the principle that usual employment is evidence of the powers of an agent, and a responsibility will be laid upon the principal for the acts of his agent within the apparent authority so conferred upon the agent—a doctrine which has come to be applied to corporations in many respects as well as to individuals, and with the same qualifications and limitations. In such cases, the authority of the officer does not depend so much on his title, or on the theoretical nature of his office, as on the duties he is in the habit of performing."

See, also, *Clement* v. *Young-McShea Amusement Co., 69 N. J.*

*Eq.* (*3 Robb.*) *347; Blake* v. *Domestic Manufacturing Co.,* 64 *N. J. Eq.* (*19 Dick.*) *480.*

As to the second reason: There can be no doubt but that if an order be drawn on a particular fund and presented to the debtor an equitable assignment is worked even though the debtor refuses to accept the notice; that is, refuses to recognize it or to be bound by its terms. *Superintendent* v. *Heath,* 15 *N. J. Eq.* (*2 McCart.*) *22;* ↓*Bradley & Currier Co.* v. *Berns,* 51 *N. J. Eq.* (*6 Dick.*) *437.* The question, therefore, is, whether the board of chosen freeholders had notice of this assignment. The assignment was lodged with the county collector, the financial officer of the county, who was the disbursing officer of the board. I have no doubt that notice to the county collector was notice to the freeholders of Mercer of this assignment. *Trenton Banking Co.* v. *Woodruff,* ↓2 *N. J. Eq.* (*1 Gr. Ch.*) *117.* But it seems that it is unnecessary that the freeholders of Mercer should have had notice of the assignment, for, in *Cogan* v. *Conover Manufacturing Co.,* ↓69 *N. J. Eq.* (*3 Robb.*) *809,* the court of errors and appeals held:

"As between an assignee of a fund under an equitable assignment and the receiver of the assignor, an insolvent corporation, notice of the assignment to the debtor or holder of the fund is not necessary to perfect the title of the assignee." See, also, *United States Fidelity and Guaranty Co.* v. *City of Newark,* 74 *N. J. Eq.* (*4 Buch.*) *454.*

As to the third, and in my judgment controlling, reason, namely, that the C. B. Walton Company was insolvent at the time the assignment was made, and that therefore the assignment is void under the statute as against creditors. In my opinion the company was insolvent at the time the assignment was made. It was organized in 1903 and went into the hands of a receiver in December, 1908, seven months after the giving of the order in question. It never flourished, was generally in financial straits, and was constantly helped by Allen, the defendant, who took the assignment. At the time the assignment was given the company was in arrears for taxes, was unable to pay its insurance, was in default for interest on mortgages, had a balance of cash in one bank of $3.60, in another $6.91, and in another $2.61. It could

not pay its current bills in full. Its credit with the banks was exhausted. A little over a year before the date of the assignment, the company had conveyed all its property, both real and personal, to Allen, as security for past due indebtedness and to secure future advances. When requested to endorse the notes for the raising of money to prosecute the road operations, Allen at first refused, saying he had gone as far as he wanted to, but consented to endorse further on condition that the order be given to him. There are other facts and circumstances indicating insolvency, and Allen's knowledge of it, which will not be adverted to, as enough, I think, has already been pointed out. The company was without funds, and, apparently, could get none without security. The very fact that it could not undertake the road making, unless the entire project was financed by an outsider, was, in itself, a cogent evidence of its financial irresponsibility; in other words, its insolvency.

On the subject of insolvency and notice to the assignee, *Regina Music Box Co.* v. *Otto & Sons, 65 N. J. Eq. (20 Dick.) 582; affirmed, S. C., 68 N. J. Eq. (2 Robb.) 801,* is an authority. In that case it was held in the court of chancery, whose opinion was adopted by the court of errors and appeals, that a security given by a corporation, which is insolvent, or which contemplates insolvency, for a presently moving consideration, is valid if the person taking the security be without notice of such insolvency or contemplation of insolvency. The same doctrine was held by the court of last resort in *Cogan* v. *Conover Manufacturing Co., ubi supra; 69 N. J. Eq. (3 Robb.) at p. 815.* These cases are express authority to the effect that an asignment, although for a valid and presently moving consideration, if made by an insolvent corporation, so known to be by the assignee, or by a corporation contemplating insolvency, with such contemplation known to the assignee, will be void as against creditors. Judged by these standards, the assignment under review is invalid and must be avoided in favor of creditors. Insolvency is the only thing that dethrones the Allen assignment.

There is, I understand, $8,008.39 in the hands of the county under this contract, with laborers' liens, entitled to priority, amounting to $156.50, which leaves $7,851.89 for distribution.

The priority of the lien claimants to the balance of the fund will be established as follows: Cope's first lien for $3,754.51; George R. Cain's lien for $431; Cope's second lien for $6,674.43; Van Sant's lien for $96; Cope's third lien for $88.81; Joseph B. Hill's lien for $134.95. It is perfectly apparent that the fund will be exhausted by the payment in full of Cope's first lien, Cain's lien and partial payment of Cope's second lien.

The claim of the Indian Refining Company is disallowed because the company failed to comply with the provisions of the statute requiring the filing of notices by claimants. The claim of the defendant Yuzzolina is disallowed for the same reason, and for the additional reason that he did not perform any labor or furnish any materials toward the performance of the completion of the road in question. His bill is for the board of laborers who did the actual work. He does not fall within the statute.

A decree will be advised in conformity with the above views.