C. Berenda Weinberg is a physician, resident of Atlantic City, deeply interested in research work in connection with the ills of the human body, the discovery of remedies therefor *Page 691 
and the method for the cure of the diseases of mankind. He was not in a position financially to proceed with the investigations to the extent desired by him.
Isadore Stettenheim and Frederick Stettenheim, father and son, who had been patients of Weinberg and apparently felt under obligations to him — to use Weinberg's words — "placed $25,000 at his disposal" for the purpose of assisting in the purchase and equipment of a building for medical and research purposes. Weinberg insists that so far as the father was concerned, this money was to be a loan; but so far as the son was concerned, it was to be a gift.
Upon the 21st day of March, 1922, a certificate of incorporation of the C. Berenda Weinberg Clinic and Research Laboratories was recorded in the clerk's office of Atlantic county, and on the 23d day of March, 1922, was duly filed in the office of the secretary of state of New Jersey.
Said certificate stated the name of said corporation to be: "C. Berenda Weinberg Clinic and Research Laboratories;" that its principal office in the State of New Jersey was: "109 South Iowa Avenue, Atlantic City, New Jersey;" that "C. Berenda Weinberg" was the agent in charge; and that the objects for which it was formed were: "The operation of an institution for the study and treatment of gastro-intestinal diseases and research on the internal secretions; the results, obesrvations and discoveries that result from such researches to be given from time to time for the benefit of the public through proper medical channels. It also being the purpose to provide proper facilities for the treatment of indigent patients free of charge;" that the capital stock was $25,000, divided into five hundred shares of the par value of $50 each, and the incorporators were C. Berenda Weinberg, 22 South Illinois avenue, Atlantic City, New Jersey, one share; Solton Engel, 17 Cedar street, New York City, New York, one share, and Robert G. Grey, 17 Cedar street, New York City, New York, thirty-eight shares. Robert G. Grey and Solton Engel were employes of Stettenheim — Grey as secretary or confidential man and Engel as a clerk, and manifestly the $25,000 advanced by Stettenheim was for the purpose *Page 692 
of the incorporation, used as the basis for issuing said shares of stock.
The first meeting of the corporation was held at the office of Stettenheim, or of Grey, at 17 Cedar street, New York City, on the said 23d day of March, 1922. It may be, however, that this date "23d" is incorrect, as it is in writing, filling a blank left in the minutes, which are typewritten, and which were probably prepared in advance, the place of the meeting also being in writing in a blank space left therein.
A form of by-laws was read and adopted. An amendment to said by-laws was passed as follows: "Neither the president nor any other officer or director may contract a debt on behalf of the corporation, or sell, assign or transfer any property, real or personal, belonging to the corporation, without the sanction of the entire board at a regular or special meeting." It will be noted that this method of amendment of the by-laws was in violation of section 26 of the by-laws which had just been adopted.
The three incorporators were elected directors. On the 25th of March, 1922, the three directors met and elected themselves as officers, as follows: President and treasurer, C. Berenda Weinberg; vice-president, Solton Engel; secretary, Robert G. Grey.
It was "ordered that C. Berenda Weinberg be authorized to open a bank account in the Chelsea National Bank, to deposit moneys therein, and to draw checks thereon, in the name of C. Berenda Weinberg Clinic and Research Laboratories, as treasurer of the company."
It was "resolved that C. Berenda Weinberg be and he is hereby appointed the agent of the company in charge of the registered office, upon whom process against the company may be served in accordance with the laws of New Jersey." The amendment to the by-laws as adopted by the stockholders was read.
On March 23d 1922, a proxy is entered in the following words:
"We, the undersigned, being all the incorporators of the C. Berenda Weinberg Clinic and Research Laboratories, organized under the laws *Page 693 
of the State of New Jersey, do hereby waive notice of the time, place and purpose of the first meeting of the incorporators of the said company, and do fix the 23d day of March, A.D. 1922, at 11 A.M. o'clock, in the city of New York, as the time and the place of said meeting.
And we do hereby waive all the requirements of the statutes of New Jersey as to the notice of this meeting, and the publication thereof; and we do consent to the transaction of such business as may come before said meeting."
On April 30th, 1923, minutes of stockholders' and directors' meetings appear as follows:
"The annual stockholders' meeting, which was adjourned from April 2d 1923, was held today in the office of the company in Atlantic City, New Jersey.
Present: C. Berenda Weinberg, Solton Engel (by proxy), Robert G. Grey (by proxy), comprising all of the stockholders of the corporation.
The minutes of the first meeting of the corporation were read, together with the by-laws as heretofore adopted and all of which are hereby confirmed.
The following were chosen directors of the company to serve for one year and until their successors are chosen and qualify: C. Berenda Weinberg, Solton Engel, Robert G. Grey
There being no further business, the meeting adjourned.
 (Signed) C. BERENDA WEINBERG, Pres. Treas."
"The annual directors' meeting was held in Atlantic City, N.J.
The following directors were present: C. Berenda Weinberg, Solton Engel (by proxy), Robert G. Grey (by proxy).
The reading of the minutes of the previous meeting was dispensed with.
The following were unanimously chosen officers of the company to serve for one year and until their successors are chosen and qualify: President and treasurer, C. Berenda Weinberg; vice-president, Solton Engel; secretary, Robert G. Grey.
There being no further business, the meeting was adjourned.
 (Signed) C. BERENDA WEINBERG, Pres. Treas."
It was proven that these minutes were prepared by Grey in New York, sent to Weinberg at Atlantic City to sign and place in the minute book as a minute of the annual stockholders' and annual directors' meetings. Then follow minutes as follows: *Page 694 
"May 1st, 1923.
A regular monthly meeting of the board of directors was held this day at 12 o'clock noon in the New York office of the company at 17 Cedar street.
Present: Solton Engel and Robert G. Grey, a quorum under the by-laws.
The minutes of the annual meeting were read and approved as read.
There being no unfinished business and no new business offered, the meeting adjourned.
 (Signed) ROBERT G. GREY, Secretary."
Minutes in identically the same form (except the changing of the word "annual" to "previous") appear for alleged meetings on June 1st, 1923; July 3d 1923; August 1st, 1923; September 4th, 1923; October 11th, 1923; November 1st, 1923; December 1st, 1923; January 2d 1924; February 1st, 1924; March 1st, 1924.
On March 13th, 1924, appears a proxy to Weinberg in the same form as that of April 27th, 1923, and minutes of alleged meetings of the stockholders and directors, duly signed by C. Berenda Weinberg as president and treasurer in the same form as those of 1923. Then follow minutes of directors' meetings in the same form as above.
On November 29th, 1924, appears a proxy signed by C. Berenda Weinberg, naming I.M. Stettenheim as his proxy at any meeting of the directors or stockholders.
On December 1st, 1924, appears a minute of a meeting of the directors, all being present, at which the following resolution was passed:
"Resolved that C. Berenda Weinberg, president, and Robert G. Grey, secretary, be authorized to give Hamilin and Company, 17 Cedar street, New York City, three promissory notes as follows:
 $750 payable April 1st, 1925 750 payable Aug. 1st, 1925 1,000 payable Dec. 1st, 1925
Resolved further that C. Berenda Weinberg, president, and Robert G. Grey, secretary, be authorized and hereby are authorized to sign these notes on behalf of the company."
This minute was not signed by Grey, the secretary, but bears the signature of C. Berenda Weinberg as president. *Page 695 
The minutes of the meetings of the directors on January 2d 1925; February 2d 1925, and March 2d 1925, follow as before.
On March 10th, 1925, there appears the usual proxy to C. Berenda Weinberg and on April 1st, 1925, the stereotyped minutes of the stockholders' and the directors' meetings appear.
The minutes of the directors' meetings appear as of May 1st, 1925; June 1st, 1925; July 1st, 1925, and August 1st, 1925, in the same form as above.
On September 1st, 1925, the same minute appears, except that Grey was not present, having given a proxy to Engel, who signs the minute.
The minutes of the directors' meetings appear as of October 1st, 1925; November 2d 1925; December 1st, 1925, and January 2d 1926, in the same form as above.
On January 19th, 1926, a waiver of notice of a special meeting of the C. Berenda Weinberg Clinic and Research Laboratories, not specifying whether of stockholders or directors, and a minute of such meeting appears as follows:
"January 19th, 1926.
Those present at the special meeting of the C. Berenda Weinberg Clinic and Research Laboratories held this day were:
Solton Engel and Robert G. Grey, a quorum under the by-laws.
The following resolution was made:
Resolved that C. Berenda Weinberg, president of the C. Berenda Weinberg Clinic and Research Laboratories, be and hereby is authorized to sign three notes payable to the order of Hamilin 
Company, 17 Cedar street, New York City, $750 each, dated April 1st, July 1st and October 1st, 1926, respectively.
The foregoing resolution was duly seconded and passed by unanimous vote.
 ROBERT G. GREY, Secretary."
Nothing appears to indicate that Weinberg waived notice thereof or participated therein. Then follows the usual minutes of meetings of February 1st, 1926, and March 1st, 1926.
On March 23d 1926, there is the proxy for the annual meeting and the customary minutes thereof, signed by Weinberg. *Page 696 
Then the minutes of May 1st, 1926; June 1st, 1926; July 1st, 1926; August 2d 1926; September 1st, 1926; October 1st, 1926; November 1st, 1926, and December 1st, 1926, in the usual form.
All of these minutes appear in a loose-leaf binder. In a second binder appears like minutes of the meetings of January 3d 1927; February 2d 1927; March 1st, 1927, and on March 17th, 1927, the usual proxy appears.
On April 1st, 1927, the regular meeting was attended by all directors, and the following resolution was passed:
"Resolved that Dr. C. Berenda Weinberg, president, be notified and instructed that there be no renewal of the first mortgage on the property of the C. Berenda Weinberg Clinic and Research Laboratories, that the holder of said mortgage will be paid off by the stockholders of the company and that said mortgage be transferred on or before the expiration thereof."
On April 1st, 1927, the annual stockholders' meeting was held, with all stockholders present, and the following resolution was passed:
"Resolved that notice be given to the present mortgagors that mortgage will be paid off to them at the expiration of said mortgage, April 17th, 1928, or before said date."
The same directors having been elected, they met and reelected the officers.
On May 1st and June 1st, Engel was the only director present in person, but by proxy represented Grey, and like minutes were made. On July 1st, August 1st and September 1st, the same minutes appear, Grey being present. Then follow the minutes of October 1st, November 1st and November 21st, at each of which Grey and Engel were present, but Weinberg was not, in which appear the following:
On October 1st —
Mr. Engel reported that he had been advised by Dr. Weinberg, president of the corporation, that title to the property at 109 South Iowa avenue had been transferred to C. Berenda Weinberg and wife in March, 1927, and that the sheriff had *Page 697 
levied upon it and had ordered its sale for October 6th, 1927, to satisfy personal judgments against Dr. Weinberg.
Upon reference to Mr. Vincent L. Liebell, attorney, the matter was turned over to Cole Cole, attorneys of Atlantic City, who have drawn up a petition to the court of chancery that the fraudulent transfer be set aside. Mr. Engel reported that he had verified the petition. A restraining order has been obtained holding up the sale pending decision on the petition.
The following motion was made by Mr. Grey:
"Resolved that the action taken by Mr. Engel in protection of the interest of this corporation in the property at 109 South Iowa avenue be and hereby is approved."
November 1st —
"Resolved that Dr. C. Berenda Weinberg, president and treasurer, be and hereby is requested to resign as president and treasurer of the corporation.
Resolved that the vice-president or secretary of the corporation be and hereby are authorized to take any action necessary to protect the property of the corporation, located at 109 South Iowa avenue, Atlantic City, New Jersey."
November 21st, 1927 —
"Resolved that the agreement made on November 15th, 1927, between Dr. C. Berenda Weinberg of Atlantic City, county of Atlantic and State of New Jersey, and Michael L. Davies of Atlantic City, county of Atlantic and State of New Jersey, relating to the sale of the property known as 109 South Iowa avenue, Atlantic City, New Jersey, in which Dr. Weinberg agreed to convey by general warranty deed to said Michael L. Davies or to any person, persons or corporations designated by the latter on or before the first day of March, 1928, for the sum of $100,000, be and is hereby disavowed.
It was further resolved that any action taken or to be taken by Dr. C. Berenda Weinberg on behalf of the corporation be and is hereby disavowed and disapproved, unless such action was or is taken in compliance with instructions of the attorneys for the corporation."
A letter written by Grey to Weinberg, dated March 27th, 1922, is very illuminating as to real security for the money advanced by Stettenheim (there being evidence that Grey was only acting for him). The letter of Grey, as secretary, dated April 3d 1922, shows the payment of shares held by Weinberg. *Page 698 
The property at 109 South Iowa avenue was purchased in the name of C. Berenda Weinberg Clinic on April 15th, 1922, as shown by settlement certificate of the Atlantic Guaranty and Title Insurance Company, and shows payment of $15,946.90, presumably of the $17,000 advanced by Stettenheim.
Just prior to the annual meeting of April 1st, 1929, a letter from Grey to Dr. Weinberg is placed in a minute book and numbered as page 24, in the following words:
"In going over your tax return I find the items —
Notes payable — $15,000.
1. To whom was note given?
2. Is it secured by any mortgage?
3. When was note given?
Mortgage — $23,000.
1. Is this the entire amount of first mortgage?
Interest — $1,380.
1. To whom was this amount paid?
2. Date of payment?
Net income — $1,500.
1. To whom was cash given?
Will you please answer these questions by return mail, as I would like to straighten out my records."
On page 51 appears what purports to be a letter from Grey as secretary to Weinberg, as follows:
"On October 6th I sent you the following letter:
According to a letter of the Atlantic Guaranty Title Insurance Company of Atlantic City, New Jersey, dated April 15th, 1922, the property of the C. Berenda Weinberg Clinic and Research Laboratories is subject to a first mortgage which is payable within three years, that is during 1925.
I presume that you are continuing this as an overdue mortgage. Is this correct? I have not received any reply as yet."
Following page 53 appears a letter from Dr. Weinberg to Hamilin Company in which he states that the taxes for 1925 had been paid.
Filed in the minute book appears a copy of a letter from Grey to Dr. Weinberg as president, dated March 27th, 1922, as follows: *Page 699 
"I enclose herewith check for $17,000 in payment of three hundred and forty shares of stock of your company at $50 per share to enable you to purchase building at 109 South Iowa avenue, Atlantic City, New Jersey, subject to first mortgage of $22,000, with the understanding that there is to be no other mortgage unless it is desired that a second mortgage be issued to me. Whenever such second mortgage is paid in full, capital stock is to be transferred to the party taking up the second mortgage, or vice versa. As the stock is being retired, second mortgage is to be reduced in proportion thereto.
In the meantime, I reserve the right to make a term lease of the property instead of creating a second mortgage.
In accordance with our understanding I am to purchase one hundred and twenty shares more at $50 a share (total $6,000) as soon as the transfer of property to the company has been completed, the deed delivered and the stock issued and delivered.
As per our understanding the interest or dividends are to be six per cent. payable semi-annually. I also enclose herewith,
 (1) Agreement between Robert G. Grey and C. Berenda Weinberg.
(2) A copy of certificate of incorporation.
 (3) Agreement for sale of land by George W. Webb et ux. to you.
 (4) Unsigned deed Seraph F. Lillig et ux. to C. Berenda Weinberg Clinic and Research Laboratories, Incorporated."
There also appears a copy of a letter from Grey as secretary to Weinberg as president, as follows:
"The following shares of stock for the C. Berenda Weinberg Clinic and Research Laboratories have been issued:
 Certificate No. 1, 1 share — C. Berenda Weinberg. Certificate No. 2, 1 share — Solton Engel. Certificate No. 3, 38 shares — Robert G. Grey. Certificate No. 4, 340 shares — Robert G. Grey.
I am enclosing herewith 38 shares of Robert G. Grey (Certificate No. 3) transferred to you and 1 share (Certificate No. 1) in your name. The other share of the 40 original shares of stock representing $2,000, for which amount the company was incorporated, is being held by Mr. Engel, as a director of the company. It has, however, been transferred to you on the reverse side. Certificate No. 4 represents shares issued to Robert G. Grey in payment of $17,000. Certificates No. 1, 2 and 3 represent the original 40 shares for which you paid $2,000."
Dr. Weinberg's testimony is to the effect that at the time of the purchase of 109 South Iowa avenue, the house consisted of six rooms and two baths. When completed there were twenty-one rooms. *Page 700 
There was paid on account of the purchase ............... $17,500
To remodel the building ......................... $27,000
The construction of 11 bath rooms ............... 4,200
An oil burner system ............................ 3,000
Piping house .................................... 2,000
Operating rooms ................................. 7,000
Moving furnace, new chimney ..................... 1,000
 _______ 44,200
Making a total of ....................................... 61,700
Amount received from Stettenheim ........................ 25,000
 _______
 $36,700

That he paid out the balance of $36,700, securing the money from his receipts and upon several loans which he paid back. He paid all the taxes and interest on the first mortgage, and every six months he paid to Stettenheim or to Grey the sum of $750, being interest on the $25,000 paid in or advanced by Stettenheim.
Weinberg was the only one in charge at 109 South Iowa avenue, and conducted it as though it was his own property.
A. On the 16th day of February, 1925, a mortgage was made to one Morosca to secure the payment of the sum of $2,200, which mortgage was signed by C. Berenda Weinberg as president and attested by his wife, Sadie Weinberg, as secretary. On February 17th, 1925, this mortgage was duly assigned and canceled on March 25th, 1925.
B. On the 20th day of March, 1925, a mortgage was made to Morris Bernstein to secure the payment of $7,000. This mortgage was signed by C. Berenda Weinberg as president and attested by Sadie Weinberg as secretary, and was canceled March 25th, 1926. The proceeds of this mortgage were paid out by the title company as follows:
 To Title Company charges ............ $80.50
 Cancellation of Mortgage A .......... 2,212.46
 Bernstein ........................... 942.73
 Check to order C.B.W.C. R.L. ...... 3,764.31
 _________
 $7,000.00

This check was endorsed "C. Berenda Weinberg Clinic and Research Laboratories, Inc., C. Berenda Weinberg." *Page 701 
C. On the 24th day of April, 1925, a mortgage was made to one Peikin to secure the sum of $3,000 and signed the same as above. This mortgage was canceled September 18th, 1925.
D. On the 16th day of September, 1925, a mortgage was made to said Bernstein to secure the sum of $5,000 and signed the same as before. This mortgage was canceled on March 25th, 1926.
The proceeds of this mortgage were paid out by the title company as follows:
 To Title Company charges .............. $72.50
 Bernstein, Ins. Com. ................ 675.08
 To C.B.W.C. L. ...................... 4,252.42
 _________
 $5,000.00

This check was endorsed: "C. Berenda Weinberg Clinic Research Lab. Inc., C. Berenda Weinberg, Pres., C. Berenda Weinberg."
E. On August 27th, 1925, a mortgage was made to said Peikin to secure payment of $2,600 and signed as before. This mortgage was not recorded until after the record of mortgage D and was canceled on March 25th, 1926.
F. On the 9th day of January, 1926, a mortgage was made to Atlantic Amortization Company to secure the sum of $2,200, and was signed as before. This mortgage was canceled on March 25th, 1926.
G. On March 17th, 1926, a mortgage was made to said Morris Bernstein to secure the payment of $20,000, and was signed as before, and is still of record.
The proceeds of this mortgage were paid out by the title company as follows:
To Title Company charges ........................................ $145.30
Bernstein — Int. on $7,000 and $5,000 to date ................... 360.00
Bernstein — Comm. ...................................... 1,990.00
 Fire Ins. .................................. 87.97
 ________
2,077.97 Atl. Amortization Mtg. Co. to pay F. ............................ 1,522.50
C.B.W.C. R. La. ............................................... 3,894.23
 _________
 $8,000.00
 *Page 702 
Mortgage B canceled ............................................. $7,000.00
Mortgage D canceled ............................................. 5,000.00
 __________
 $20,000.00

The check to C.B.W., c., was endorsed C. Berenda Weinberg Clinic and Research Lab., Inc., C. Berenda Weinberg, Pres. and Treas., C. Berenda Weinberg.
H. On March 17th, 1926, a mortgage was made to one Peikin to secure the sum of $2,600, and was signed as before. This mortgage was evidently to take the place of E, which was canceled.
I. On March 30th, 1926, a mortgage was made to the Atlantic Amortization Company to secure the payment of $2,575, and was signed as before, and still remains of record.
J. On July 7th, 1926, a mortgage was made to W.I. Schloss to secure the payment of $6,500 and was signed as before and was canceled on February 25th, 1927.
On the 4th day of March, 1927, a deed was made purporting to convey said property to the said C. Berenda Weinberg and Sadie, his wife. This deed was signed C. Berenda Weinberg as president and attested by said Sadie Weinberg as secretary.
Thereafter, said Weinberg and his wife made a mortgage to I.E. Schloss and Mildred Klein as executors to secure the sum of $6,500. This mortgage was evidently to take the place of J, which was canceled.
All of these instruments were recorded in the clerk's office of Atlantic county, without undue delay.
On the 9th day of June, 1927, a bill was filed in this court to foreclose the mortgage of $22,000 held by Martha Lippincott (and subject to which the conveyance to the clinic, c., was made). This suit proceeded to a final decree, and at a sale held by the sheriff on December 8th, 1927, the said premises were sold to said Morris Bernstein for the sum of $42,000, and after an order of confirmation, a deed was delivered to him.
With the exception of the organization meetings of the stockholders and directors, and of one meeting held December *Page 703 
1st, 1924, at which a resolution was passed authorizing the execution of three certain promissory notes to a New York firm, in the aggregate amount of $2,500, no meetings of either were held until April 1st, 1927, about the time the trouble concerning these transactions arose.
It is true that in the minute books appears minutes of meetings having been held, but the evidence is uncontradicted that such minutes were prepared in New York and sent to Weinberg to be entered in the book.
The dividends received by Stettenheim were not dividends earned by the company, but were, in fact, payments made to cover interest upon money advanced by him. In fact, Grey wrote to Weinberg immediately after the original directors' meeting that "as per our understanding, the interest or dividends are to be six per cent., payable semi-annually."
It is manifest that there was no specific authority given by resolution to Weinberg to execute these instruments.
In Economy Auto Supply Co., Inc., v. Fidelity Union TrustCo., 105 N.J. Law 206, it was held: "Our decisions have always been that the president of a corporation, although its executive head, is not empowered to bind the corporation in all of its business affairs. These cases are collected in Aerial League ofAmerica v. Aircraft Fireproofing Corp., 97 N.J. Law 530, and will not be here again recited. They deal with various transactions between corporations and third persons involving the implied power of the executive head of the corporation to bind it."
In Aerial League of America v. Aircraft Fireproofing Corp.,supra, it was held: "A corporation is bound by the act of an officer or agent only to the extent that the power to do the act has been conferred upon such officer or agent expressly by the charter, by-laws or corporate action of its stockholders or board of directors, or can be implied from the powers expressly conferred, or which are incidental thereto, or where the act is within the apparent powers which the corporation has caused those with whom its officers or agents have dealt to believe it has conferred upon them."
There are numerous cases in which the powers of an officer *Page 704 
of a corporation and his authority to act for the company are enlarged beyond those powers which are inherent in his office. But those are cases in which the agency of the officer has arisen from the assent of the directors, presumed from their consent and acquiescence in permitting the officer to assume the direction and control of the business of the company. Thus, when in the usual course of the business of a corporation, an officer has been allowed to manage its affairs, his authority to represent the corporation may be implied from the manner in which he has been permitted by the directors to transact its business. These are simply instances of the application of the principle that usual employment is evidence of the powers of an agent, and a responsibility will be laid upon the principal for the acts of his agent within the apparent authority so conferred upon the agent — a doctrine which has come to be applied to corporations in many respects as well as to individuals, and with the same qualifications and limitations. In such cases, the authority of the officer does not depend so much on his title, or on the theoretical nature of his office, as on the duties he is in the habit of performing. Stokes v. New Jersey Pottery Co., 17 Vr.237, 242; Martin v. Webb, 110 U.S. 7; Commercial, c., Ins.Co. v. Union, c., Ins. Co., 60 U.S. 318; Mining Co. v.Anglo-Californian Bank, 14 Otto 192; Tayl. Corp. ¶¶ 202, 236,244; Ang. A. Corp. ¶¶ 229, 302." Fifth Ward Savings Bank v.First National Bank, 48 N.J. Law 513 (at p. 527).
The present chancellor, in Cope v. C.B. Walton Co., 77 N.J. Eq. 512
(at p. 519), said: "As to the first reason [because the C.B. Walton Company did not execute or authorize the execution of the assignment, which was made by the treasurer without authority, and that it is therefore not binding upon the company] true it is that the board of directors did not authorize the execution of the assignment to Allen, but, irrespective of what the by-laws provide concerning the powers of the treasurer with reference to the making of orders for the payment of money, I hold that Mr. C.B. Walton, the treasurer of the company, had power to make the assignment in question because the directors of this *Page 705 
corporation since its organization in 1903 had permitted him to exclusively manage and control its affairs."
Then follows the quotation above made, and "see, also,Clement v. Young-McShea Amusement Co., 69 N.J. Eq. (3Robb.) 347; Blake v. Domestic Manufacturing Co., 64 N.J. Eq.
(19 Dick.) 480."
Weinberg, as president, executed at least ten different mortgages upon the premises, received the proceeds therefor, either as treasurer or personally, conducted the business in its entirety and in every way controlled and operated the company and its business as though it was his private property.
At no time, from the meetings at the incorporation of the company, did the two directors, Engel and Grey (with the single exception before referred to), take any part in the business of the company, except to sign pretended proxies and minutes of the company, or to participate in alleged meetings of the stockholders and directors, at none of which meetings was there any attempt to take any action concerning the conduct of the business.
In Conover v. Mutual Insurance Co. of Albany, 1 N.Y. 290:
"For the defense, it was insisted that [certain] acts of the secretary were never brought to the knowledge of the directors or received their formal ratification, but it was held on this point by Judge Johnson (at p. 292) that the directors were bound to know the uniform course of business pursued by their sole agent for the transaction of their business at their office, especially where regular entries of his acts were made in their books, and they must be held responsible on the ground of a tacit assent and approval, unless they can show that, by a strict vigilance and scrutiny into his acts, they were unable to ascertain the course he was pursuing, and could not, therefore, arrest it or put the public upon their guard."
Even should it be found that Weinberg may be deemed to be clothed with authority to transact the ordinary business of this corporation by reason of the circumstances hereinbefore recited, he cannot be deemed to be clothed with authority to sell and dispose of all of the property of the *Page 706 
corporation; that is not company business; it would result in terminating the company's activities and it is debatable whether the directors, acting as such, could do so without the consent of the stockholders. Knopf v. Alma Park, Inc., 105 N.J. Eq. 299;Meyerhoff v. Bankers Securities, Inc., Ibid. 76.
The deed from the company to Weinberg is a nullity. There is no authorization by the board of directors authorizing Dr. Weinberg to execute this deed nor has such action ever been ratified. The rule of caveat emptor obtains and particularly should it obtain in this case where the president of a corporation, his wife acting as secretary, pretends to execute a deed to himself, without consideration.
"The first taker under the disputed deed took with notice that it was dealing with an agent and was bound to verify his authority at its peril. 27 R.C.L. 668 et seq. It was also put on notice by the sale of the tract as a unit, the tract having been previously laid out in building lots by a recorded map. Subsequent purchasers were likewise put upon inquiry by the record.
"The special equity of innocent purchaser for value, set up by the defendants, cannot prevail against the legal title of the company. 27 R.C.L. 673. The innocence and good faith of a subsequent purchaser of an invalid title cannot supplant the legal title. Vattier v. Hinde, 7 Pet. 252; Lindblon v.Rocks, 146 Fed. Rep. 660."
A decree will be advised in accordance herewith. *Page 707