This bill is filed to foreclose a second mortgage. The defendant receiver of the mortgagor Park Lane Apartments of Englewood, Incorporated, resists foreclosure and asks to have the mortgage annulled on the ground that it is void under section 64 of the Corporation act. Comp. Stat. p. 1638.
The Park Lane Apartments in 1927 began the erection of a large apartment house. It financed this operation in part by an issue of $260,000 in six per cent. coupon bonds secured by a first mortgage made by it to the National Park Bank of *Page 504 
New York as trustee and dated October 15th, 1927. The bonds issued were of varying maturity, $8,000 of them falling due October 15th, 1929.
They were secured not only by the mortgage, but by an indemnity bond recited at length in the mortgage, executed by the Park Lane Apartments, the General Bond and Share Corporation, and the complainant, the Puritan Corporation, as principals, and the Maryland Casualty Company, as surety. The General Bond and Share Corporation and complainant are affiliated companies which marketed the bond issue.
The mortgage contained a covenant on the part of the mortgagor to pay to the trustee on the first day of each month an amount equal to one-sixth of the interest next to fall due and an amount equal to one-twelfth of the installment of principal next maturing. The mortgage authorized complainant, in event of the failure of the mortgagor to pay any installment of principal or interest, to pay the same for the account of the mortgagor, and provided that such payments should be secured by the mortgage. The mortgagor expressly covenanted to pay on demand all moneys so advanced. Another section of the mortgage gave complainant the right to purchase and hold the bonds and interest coupons representing items unpaid in the event the mortgagor should fail to pay any installment of principal or interest. Such bonds and coupons are kept alive and share in the distribution in the event of a sale under the provisions of the mortgage.
On May 1st, 1929, and each month thereafter, there was payable by the mortgagor to the trustee $666.67 on account of principal, and $1,300 on account of interest, making $1,966.67 in all. If these payments had been duly made, the trustee would have had on hand October 15th, 1929, $8,000 to retire bonds in that sum then due and $7,800 to pay the semi-annual interest charge, but the mortgagor failed to make any of the payments due after May. Early in September, complainant demanded that the mortgagor assign to it the rents accruing. This assignment was made and thereafter complainant collected and disbursed the income of the *Page 505 
property. At the time this assignment was demanded, the president of the Park Lane Apartments informed complainant that the reason for falling behind in the payments on the mortgage was that he had been using the income to pay other creditors of the company; that there were still unpaid debts amounting to $20,000 or $25,000 in addition to the mortgage, and that the company had no income except the rentals from the apartment house. This was the only asset of the corporation. He was hopeful of the situation because he thought personal friends would come to the rescue.
On October 14th the trustee had on hand only $7,000 to meet the payments of $15,800 due the following day. Thereupon, complainant sent to the trustee its check for $8,800, and received therefor one bond for $1,000 and coupons for $7,800 which it still holds. As a condition to making this advancement, complainant demanded and received from Park Lane Apartments a promissory demand note dated October 14th, 1929, for $8,800, with interest at two per cent. per month, payable monthly in advance and a second mortgage securing the same. Complainant was not satisfied with this security and insisted that the president of the Park Lane Apartments and his wife each endorse the note. This was done.
Three weeks later, the American Fence Construction Company recovered a judgment against Park Lane Apartments for $449.38, and on December 5th, Richards Wilcox Manufacturing Company recovered judgment for $590.48. Taxes due June 1st, 1929, remained unpaid.
On December 9th, 1929, the Park Lane Apartments was adjudged to be insolvent and the receiver appointed. Complainant on February 13th, 1930, filed this bill to foreclose its second mortgage.
A corporation is insolvent within the meaning of section 64 of the Corporation act when it is in general unable to meet its pecuniary obligations as they mature either by available assets or by an honest use of its credit. Hoover Steel Ball Co. v.Schafer, c., Co., 89 N.J. Eq. 433; 105 Atl. Rep. 500; Turp v.Dickinson, 100 N.J. Eq. 41; 134 Atl. Rep. *Page 506 888. Park Lane Apartments was clearly insolvent when it executed the mortgage to complainant. Its only asset was its apartment house. It had no income at all for it had assigned the rents to complainant the previous month. That it had no credit is demonstrated by the terms which complainant exacted when it advanced $8,800. Large debts had matured which it was utterly unable to meet. Insolvency existed despite the fact that the apartment house had a fair value of $325,000 and the total debts amounted to only $290,000 or thereabouts. The complainant was fully aware of the insolvency of the mortgagor.
Complainant's counsel contends that the mortgage is valid inasmuch as the complainant paid full value for the mortgage, namely, $8,800. This contention cannot be maintained. "An assignment, although for a valid and presently moving consideration, if made by an insolvent corporation so known to be by the assignee * * * will be void as against creditors." Cope
v. C.B. Walton Co., 77 N.J. Eq. 512, 521; 76 Atl. Rep. 1044.
Furthermore, the consideration for the mortgage was not paid to the mortgagor and was not added to its assets in such manner that the general creditors might have the benefit of it.
I will advise a decree dismissing the bill of complaint and annulling the mortgage pursuant to the prayer of the counterclaim.